UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF NEW YORK
_____

LYNNE VAUGHN,
                              Plaintiff,

        v.                                                    Civil No.: 19-cv-00612(PMH)

M&T BANK CORPORATION, ARTHUR MURPHY,
NOEL CARROLL, SHELLIE PICONE, NICOLE
KRAJNA, and MARIA MONROY,
                              Defendants.
_____


**Plaintiff's Memorandum of Law in Opposition to Summary Judgement**

**Table of Contents**

Page

Preliminary Statement.................................................................................................1

Facts ...........................................................................................................................2

Argument ....................................................................................................................9

I.     Plaintiff's Termination and Replacement with a White Man
Establishes her Prima Facie Case of Race Discrimination ...............................9

II.    A Jury May Infer Discrimination and Pretext
Based on False Reasons for Termination.........................................................10

III.   Defendants' Cover-up and their Racially Coded Comments Reveal
They Were Motivated At Least In Part By Unlawful Race Discrimination ....15

IV.   M&T Bank Departed from the Personnel Policy.............................................19

V.    Defendants Subjected Ms. Vaughn to Harsher Standards Than
Non-Black Employees .....................................................................................20

VI.   Ms. Vaughn was Subject to a Hostile Work Environment .............................21

VII.  Summary Judgement Should be Denied on Plaintiff's
Supplemental State Law Claims .....................................................................22

VIII. Each of the Named Defendants Participated in the Discrimination and
Is Individually Liable under Section 1981 and the Executive Law ................23

Conclusion ................................................................................................................24

# Table of Authorities

## Federal Cases

*Armstrong v. Metro. Transp. Auth.,* 2014 WL 4276336 (S.D.N.Y. Aug. 28, 2014) ................... 19

*Belabbas v. Inova Software, Inc.,* 2017 WL 3669512 (S.D.N.Y. Aug. 24, 2017) ....................... 21

*Blaise v. Verizon N.Y. Inc.,* 804 Fed. Appx. 68 (2d Cir. 2020) ...................................................... 11

*Byrnie v. Town of Cromwell, Bd. of Educ.*, 243 F.3d 93 (2d Cir. 2001) ...................................... 11

*Colbert v. FSA Store, Inc.,* 2020 WL 1989404 (S.D.N.Y. Apr. 27, 2020) ........................... 17, 21

*Cronin v. Aetna Life Ins. Co.,* 46 F.3d 196 (2d Cir. 1995) ........................................................... 15

*Gallo v. Prudential Residential Servs., Ltd. Partnership,* 22 F.3d 1219 (2d Cir.1994)) ............. 10

*Gordon v. City of New York,* 2018 WL 4681615 (S.D.N.Y. Sept. 28, 2018). ............................. 15

*Hamilton v. DeGennaro,* 2019 WL 6307200 (S.D.N.Y. Nov. 25, 2019) ................................... 12

*Hayes v. New York City Dep't of Corr.,* 84 F.3d 614 (2d Cir. 1996) ........................................... 13

*Henry v. Wyeth Pharm., Inc.,* 2007 WL 2230096 (S.D.N.Y. July 30, 2007) ............................. 16

*Holcomb v. Iona Coll.,* 521 F.3d 130 (2d Cir. 2008) .............................................................. 9, 15

*Humphries v. City Univ. of N.Y.,* 2013 WL 6196561 (S.D.N.Y. November 26, 2013) ............... 17

*Kerzer v. Kingly Mfg.,* 156 F.3d 396 (2d Cir.1998) ..................................................................... 10

*Khater v. API Indus., Inc.,* 2017 WL 6515531 (S.D.N.Y. Dec. 19, 2017) ................................. 22

*Kirkland v. Cablevision Sys.,* 760 F.3d 223 (2d Cir. 2014) ..................................................... 9, 16

*McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) ............................................................ 9

*Murphy v. City of Newburgh*, 2018 WL 4625806 (S.D.NY. Sept. 26, 2018) ............................ 18

*Norton v. Sam's Club*, 145 F.3d 114 (2d Cir. 1998) ...................................................................... 9

*Nurse v. Lutheran Med. Ctr.*, 854 F.Supp.2d 300 (E.D.N.Y. 2012) ........................................... 19

*Parsons v. JPMorgan Chase Bank, N.A.,* 2018 WL 4861379 (E.D.N.Y. Sept. 30, 2018) ........... 12

*Patterson v. Cty. of Oneida,* N.Y., 375 F.3d 206 (2d Cir. 2004) ................................................. 23

*Quartey v. Schiavone Const. Co. LLC*, 2014 WL 1276476 (E.D.N.Y. Mar. 27, 2014) .............. 16

*Reeves v. Sanderson Plumbing Prods.,* 530 U.S. 133, 120 S. Ct. 2097 (2000) ............................ 10

*Residential Funding Corp. v. DeGeorge Fin. Corp.,* 306 F.3d 99 (2d Cir. 2002) ....................... 14

*St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993). ........... 10

*Tolbert v. Smith,* 790 F.3d 427, 434 (2d Cir. 2015). ............................................................... 9, 22

*Tubo v. Orange Reg'l Med. Ctr.,* 690 Fed. App'x. 736 (2d Cir. 2017) ....................................... 18

*Tucker v. New York City,* No. 05 Civ. 2804, 2008 WL 4450271 (S.D.N.Y. Sept. 30, 2008) ....... 19

*United States v. Brennan*, 650 F.3d 65 (2d. Cir. 2011) ................................................................. 9

*Walsh v. New York City Hous. Auth.*, 828 F.3d 70 (2d Cir. 2016) ............................................... 11

*Williams v. N.Y.C. Hous. Auth.,* 458 F.3d 67 (2d Cir. 2006) ....................................................... 22

*Wood v. Sophie Davis Sch.,* 2003 WL 21507579 (S.D.N.Y. June 30, 2003) ............................... 22

**State Cases**

*Bennett v Health Mgt. Sys., Inc.,* 92 AD3d 29 (1st Dep't 2011) .................................................. 16

## Preliminary Statement

Ms. Vaughn started out in banking as a teller in 1984. She received multiple promotions and had been successfully performing as branch manager of the White Plains branch for many years at the time of M&T Bank's acquisition of Hudson County Bank. M&T Bank terminated Ms. Vaughn, one of only two Black branch managers in the region, merely two weeks after taking over Hudson County Bank, and replaced her with a white manager.

M&T Bank departed from its own progressive discipline policies. Ms. Vaughn had no prior warning, yet she was summarily terminated for an incident where she assisted the bank to retain an elderly customer with over $200,000 in funds on deposit who wished to open a short-term promotional account with additional new money which met the required threshold. Her replacement by a Caucasian branch manager, Carl Abate, on flimsy pretextual evidence gives rise to a prima facie case of a racially discriminatory termination. M&T Bank submitted false documents to the EEOC stating that Mr. Abate was biracial, when in fact he is white.

There is ample record evidence that the termination was motivated at least in part by racial discrimination. M&T training buddies, Ms. Monroy and Ms. Krajna, who assisted Ms. Vaughn with the transaction for which she was terminated, admitted in their depositions that the Termination Summary was false, in that they never instructed Ms. Vaughn not to process the transaction, and they did not believe that they even had authority to instruct her, as they weren't in a supervisory position over her. Ms. Krajna omitted from her Buddy Statement that she assisted to transfer the monies from the customer's existing account into the money market account, as Ms. Vaughn was unfamiliar with M&T Bank's new procedures. M&T Bank failed to preserve video of the transaction, giving rise to a negative inference that Ms. Krajna assisted in the entire transaction.

The HR manager, Mr. Bailey, in a scattershot effort to buttress defendants' rationale for the discriminatory termination, contended that Ms. Vaughn engaged in "check kiting" when she was a teller several decades earlier, for which there is absolutely no evidence. Mr. Murphy had a history of treating Ms. Vaughn harshly based on racial stereotypes and silencing her in meetings. The only other African American branch manager, Susan Gordon, filed an internal discrimination complaint against Mr. Murphy which was never investigated.

The reasons for Ms. Vaughn's termination are pretextual. Numerous credibility issues preclude summary judgment. M&T Bank submitted false documents, including the Termination Summary and the Buddy Statement, to support Ms. Vaughn's termination and submitted false documents to the EEOC. Under *Reeves*, a jury may infer discrimination from the false Termination Summary and Buddy Statement as well as the false submission that Mr. Abate was biracial and the false accusation that Ms. Vaughn engaged in check kiting.

## Facts[1]

Ms. Vaughn was employed for 32 years with Sound Federal Savings and Hudson City Savings Bank. During her tenure, she was promoted from Teller to Head Teller, then to Platform Assistant, Assistant Manager, and lastly to Branch Manager. She was repeatedly complimented on her customer service skills and had favorable employment evaluations. Exs. I, J and K[2] (M&T-3278-3640); Ex. B (Murphy Tr. 53:5-22). Yet she was summarily terminated on the basis of a single alleged incident.

---

[1] A summary of relevant facts follows. A complete recitation of material facts is set forth in Plaintiff's accompanying Rule 56.1 Counterstatement of Disputed Facts ("CODF") with citations to the record contained in Conover Declaration Exhibits A, B, C, D, E, F, G, H, I, J and K.

[2] The exhibits referenced herein are attached to the Conover Declaration as Exhibits A, B, C, D, E, F, G, H, I, J and K with Bates page numbers or transcript pages identified.

Mr. Murphy, Ms. Vaughn's supervisor and Regional Manager of over 20 branches, testified that Mr. Abate's branch was closed as a result of the merger, and Mr. Murphy was told that a position would be found for Mr. Abate, who is Caucasian. Ex. B (Murphy Tr. 75:4-25, 99:24-100:3), SOF ¶21. M&T Bank submitted a statement to the EEOC that Mr. Abate was "two or more races." Ex. K (M&T-5136). That statement by M&T Bank was patently false. Ex B (Murphy Tr. 99:24-100:3).

Mr. Murphy had a history of silencing Ms. Vaughn at branch manager meetings. Ex A (Vaughn Tr. 132:24-133:15); Ex B (Murphy Tr. 65:12-66:22). Mr. Murphy, at his deposition, admitted he called Ms. Vaughn "boisterous" and "loud," racial stereotypes inapplicable to Ms. Vaughn's personality, but was unable to give any examples of her being boisterous. Ex A (Vaughn Tr. 132:24-133:15); Ex B (Murphy Tr. 65:12-67:24). He also admits that he told Ms. Vaughn that she was being "paid too much." Ex B (Murphy Tr. 29:7-23).

The only other African American branch manager reporting to Mr. Murphy, Susan Gordon, filed an internal discrimination complaint against Mr. Murphy. Ex K (M&T-4928-4929). Mr. Bailey, M&T Bank's Human Resources manager, never investigated the complaint. Exs. I and K (M&T-1460-1462, 4928-4929); Ex. E (Bailey Tr. 40:11-15). However, in response to an internal complaint from Ms. Gordon and other branch managers, Mr. Murphy was subsequently forced to resign for treating branch managers "harshly." Ex. H (M&T-700-705).

In March 2016, Ms. Vaughn helped an elderly couple with opening a promotional money market account. Ms. Krajna and Ms. Monroy were at the branch to train and assist the managers and tellers with M&T's procedures in these first weeks of the transition. The promotional rate was 1.26%, less than 1 percent above the customers' existing account rate, and lasted for only three months. Ex. H (M&T -343-346, 1455). The elderly customers could have withdrawn their

money from their savings account and deposited it as "new" money in the money market account on their own. Ex B (Murphy Tr. 88:15-19; 104:15-22). According to Mr. Murphy, the concept of new funds vs. existing funds is somewhat discretionary and the branch manager has the discretion to approve or not approve such deposits Ex. B (Murphy Tr. 88:15-19).

The MyChoice Money Market flyer sent to customers by M&T Bank only stated that the first $10,000 had to be "new money." Ex. H (M&T -343-346, 1455). The flyer contained no prohibition on old money in excess of $10,000. Ex C (Krajna Tr. 69:17-22); Ex D (Monroy Tr. 59:23-60:7). Ms. Krajna advised that M&T Bank preferred "new money," but never advised that it was against M&T Bank policy to withdraw the savings account funds and deposit them into the money market. Ex A (Vaughn Tr. 92:12-93:8).

M&T Bank admitted, in their EEOC Position Statement, that "Ms. Krajna provided a brief review [to Ms. Vaughn] on how to accomplish the task [requested by the customer.]" Ex. G (P-38). The M&T Bank buddy, Ms. Krajna, contrary to the Termination Summary, admitted she never instructed Ms. Vaughn not to process the transaction. Ex. C (Krajna Tr. 18:3-5, 36:7-12, 43:5-14). The other buddy assisting the teller, Ms. Monroy, contradicted herself in her deposition, first admitting that she told Ms. Vaughn it was "kind of like the customer was cheating, but that was fine," then later claiming she advised Ms. Vaughn not to process the transaction. Ex D (Monroy Tr. 54:2-24, 55:17-25). The Buddy Statement fails to mention the fact that Ms. Krajna returned to assist Ms. Vaughn to process the transaction and close out the existing account with a M&T Bank Work in Progress ("WIP") ticket, which Ms. Vaughn had never done before. Ex G (P-189). Ms. Vaughn called Ms. Krajna back to assist her in completing a WIP ticket to close out the customers' saving account and deposit the monies from the savings account into the money market account. Ex A (Vaughn Tr. 80:12-24, 93:12-25).

Previous in-person training sessions focused on business and commercial accounts but had not covered M&T Banks' WIP ticket procedures. Ex H (M&T-39-40); Ex. A (Vaughn Tr. 95:6-9).

Ms. Krajna never instructed Ms. Vaughn not to process the transaction. In her deposition testimony, Ms. Krajna stated: "Q: And you never instructed Ms. Vaughn not to deposit the funds? A. No." Ex C (Krajna Tr. 36:7-12). Ms. Monroy testified that she could not recall the conversation with Ms. Vaughn. Ex D (Monroy Tr. 74:8-16). Both Ms. Monroy and Ms. Krajna contradicted their deposition testimony in the declarations, produced after the close of discovery along with the Rule 56.1 Statement, in which they stated they instructed Ms. Vaughn not to process the transaction. (Monroy Decl. ¶ 22 ("I had told Ms. Vaughn that the transaction violated bank policy."); Krajna Decl. ¶ 20 ("Ms. Vaughn's actions were contrary to the instructions that I gave her.")).

Defendants allege that Ms. Krajna instructed Ms. Vaughn not to process the transaction. Defendants allege as support for that allegation its own Rule 56.1 statement rather than admissible evidence in the record. The 56.1 statement, in turn, cites the declaration produced after the close of discovery. However, that declaration contradicts the Krajna deposition transcript and does not stand for the proposition for which it is cited. Ex C (Krajna Tr. 36:7-12).

Defendants admit that the Buddy Statement was the sole reason Ms. Vaughn was terminated, despite her favorable record of 32 years of employment. The Buddy Statement and Termination Summary contradict Ms. Krajna's and Ms. Monroy's testimony and are false and misleading in that they suggest that the buddies instructed Ms. Vaughn not to process the transaction and did not assist her with it. Ex. G (P-189); Ex C (Krajna Tr. 18:3-5, 36:2-12, 43:5-14); Ex D (Monroy Tr. 29:20-22). Ms. Krajna testified that it is possible that Ms. Vaughn was

told that it was okay to process the transaction. Ex. C (Krajna Tr. 36:2-6). Neither buddy was disciplined for the alleged policy violation.

Both the teller, Ms. Antonio, and the customer, Ms. Varjan, attested that Ms. Krajna assisted Ms. Vaughn with withdrawing the funds from the savings account and depositing them into the money market together with a new check for $33,132.51 that the customer brought in. Ex G (P-8-12, 25-29); Ex C (Krajna Tr. 25-26). The customer, Theresa Varjan's affidavit similarly contradicts the Buddy Statement, stating, "The [training employee] told Lynn how to enter information into the computer to process our request." Ex G (P-12). An M&T Bank teller, Olivia Antonio, additionally stated in her affidavit in support of the EEOC Charge:

> On a separate occasion, Ms. Monroy told me that even though M&T Bank asked for volunteers to travel to the New York area and train employees in the newly acquired branches, Ms. Krajna was specifically sent to our branch 'to watch over Lynne (Vaughn].'

Ex. G (P-25-27).

Despite being advised to preserve the video of the incident by letter dated March 26, 2016, M&T Bank failed to preserve the video, giving rise to a negative inference that Ms. Krajna assisted with the entire transaction, and the Buddy Statement was false. Ex G (P-654-657); Ex B (Murphy Tr. 78:21-24).

Ms. Vaughn cooperated fully, responded to questions, prepared a written statement, and attempted to submit the statement to Mr. Carroll. Ex B (Murphy Tr. 83:13-22; Ex A (Vaughn Tr. 116:17-25, 124:21-25). The buddies' statement is dated July 26, 2016, four days after the incident, but Ms. Picone and Mr. Murphy demanded Ms. Vaughn immediately produce a written statement when they met with her. Ex B (Murphy Tr. 82:13-84:25). When Ms. Vaughn attempted to provide a written statement to Mr. Carroll several days later, he refused to accept it, instead terminating her on the spot. Mr. Murphy was aware, based on prior performance reviews

that Ms. Vaughn needed "ample time" to prepare a written statement. Ex. G (P-245). Mr. Bailey instructed Mr. Murphy not to get witness statements and not to permit Ms. Vaughn more time to write a statement. Ex. B (Murphy Tr. 81:2-83:25). Mr. Bailey emailed Mr. Murphy on April 8, 2016 discussing the possibility that Ms. Vaughn may file a "charge." Ex. H (M&T-282).

Ms. Vaughn did not falsify any M&T Bank records, as the transaction documents are completely accurate. Ex. H (M&T-248). There was nothing false in the record created by Ms. Vaughn. Ex H (M&T-248); Ex D (Monroy Tr. 66:10-13). Nevertheless, Mr. Bailey sought and secured Mr. Murphy's approval of Mr. Carroll's decision to terminate Ms. Vaughn. Ex B (Murphy Tr. 109:22-110:10).

M&T's departed from its progressive discipline policy, which makes a warning active for one year. Ex. K (M&T-5113.) Ms. Vaughn had no warnings in the years immediately preceding her termination. M&T Bank departed from its own corrective action policy for a minor policy violation and failed to apply a warning or other corrective action short of termination. Ex K (M&T-5111-5124). She was terminated for the de minimis offence of helping elderly customers do what the customers could have done themselves and assisting the bank to retain customers with hundreds of thousands of dollars on deposit. Ex. K (M&T 5111-5124); Ex. F (Carroll Tr. 55:5-57:5). Mr. Bailey later claimed that Ms. Vaughn had engaged in "check kiting" decades earlier, but there is no evidence whatsoever that Ms. Vaughn ever committed such a crime and it strains credibility that a bank would promote an employee who had done so. Ex. H (M&T-41). After a hearing on Ms. Vaughn's request for unemployment, the Labor Department found that Ms. Vaughn did not commit misconduct and was entitled to unemployment. Ex. G (P-119-124).

During the EEOC investigation, the investigator emailed counsel: "I am recommending that the Commission issue a Cause Finding for the above referenced Charge of Discrimination -

which will have to be approved by an EEOC Supervisor." Ex G (P-104). M&T Bank then submitted to the EEOC a false document that Ms. Vaughn's replacement, Carl Abate, was "two or more races, not hispanic." Ex. K (M&T- 5136). Mr. Abate is in fact Caucasian. Ex B (Murphy Tr. 99:24-100:3); Ex. G (P-363).

All of defendants' documents, including her termination letter, identify Ms. Vaughn's employer as "M&T Bank." Ex H (M&T–71). A hostile work environment is not a separate EEOC charge. Ex G (P-1).  In Ms. Vaughn's EEOC Charge, she alleged longstanding hostile treatment by her supervisor, Arthur Murphy. She alleged discrimination "both during her employment and in making the decision to terminate her employment" and alleged hostility by her supervisors. Ex. G (P-1-12). Ms. Vaughn alleges in the EEOC charge that "Arthur Murphy, Jr., and M&T's Regional Manager, Shellie Picone, both of whom are white, literally cornered Ms. Vaughn in the kitchen area of the bank branch, loudly berated her over the transactions so that her subordinates could hear, and demanded she handwrite a statement immediately." Ex. G (P-1-12). Her attorneys, in their rebuttal, alleged:

> The only pattern evident from these earlier performance issues is that Mr. Murphy, in the only two opportunities presented to him, discriminated against Ms. Vaughn in favor of Caucasian (or non-Black, African American) employees, in connection with disciplinary matters. First, as noted above, he disproportionately disciplined Ms. Vaughn in 2013 in favor of the Caucasian (or non-Black, African American) Assistant Branch Manager. Next, as discussed in the Charge and this rebuttal, he allowed three other employees who were admitted participants in the alleged commingling of funds to get off scot-free while Ms. Vaughn's employment was terminated. This is the essence of discriminatory disparate treatment.

Ex. G (P-98-104). In her EEOC Charge, Ms. Vaughn seeks mental anguish and emotional distress damages for the hostile treatment. Ex. G (P-1-12).

**Argument**

**I.     Plaintiff's Termination and Replacement with a White Man Establishes her
        Prima Facie Case of Race Discrimination**

Title VII, § 1981, and NYSHRL race and age discrimination claims are governed at the

summary judgment stage by the burden-shifting analysis first established in *McDonnell Douglas*

*Corp. v. Green*, 411 U.S. 792, 802–04 (1973). *See Tolbert v. Smith,* 790 F.3d 427, 434 (2d Cir.

2015). Under this framework, a plaintiff must first establish a *prima facie* case of race or age

discrimination by demonstrating that (1) she was within the protected class; (2) she was qualified

for the position; (3) she was subject to an adverse employment action; and (4) the adverse action

occurred under circumstances giving rise to an inference of discrimination. *Holcomb v. Iona*

*Coll.,* 521 F.3d130,138 (2d Cir. 2008). "The burden of establishing a prima facie case is not

onerous and has been frequently described as minimal." *Norton v. Sam's Club*, 145 F.3d 114,

118 (2d Cir. 1998) (internal quotation marks omitted).

If the plaintiff successfully establishes a *prima facie* case, the burden shifts "to the

employer to articulate some legitimate, nondiscriminatory reason for the adverse employment

action." *United States v. Brennan*, 650 F.3d 65, 93 (2d. Cir. 2011). "If the employer does so, the

burden then shifts back to the plaintiff to show that the employer's explanation is a pretext for

race discrimination." *Kirkland v. Cablevision Sys.,* 760 F.3d 223, 225 (2d Cir. 2014) (per

curiam).

Ms. Vaughn readily meets the minimal requirements for establishing her *prima facie*

case. She is African American and is over 40 years old; she had successfully performed her job

for many years; she was terminated from her position as branch manager; she was summarily

terminated with no prior warnings for a *de minimis* alleged policy violation and was replaced by

a white man. Defendants do not contest that she has met her minimal burden for race discrimination claims.

Defendants claim that Ms. Vaughn was terminated for violating bank policy, however numerous disputed facts, as discussed below, show that their explanation was a pretext for unlawful race discrimination, a motivating factor for her termination.

## II.     A Jury May Infer Discrimination and Pretext Based on False Reasons for Termination

To show pretext, in the context of a summary judgment motion, "the plaintiff must establish a genuine issue of material fact either through direct, statistical or circumstantial evidence as to whether the employer's reason for discharging her is false *and* as to whether it is more likely that a discriminatory reason motivated the employer to make the adverse employment decision." *Kerzer v. Kingly Mfg.,* 156 F.3d 396, 401 (2d Cir.1998) (quoting *Gallo v. Prudential Residential Servs., Ltd. Partnership,* 22 F.3d 1219, 1225 (2d Cir.1994)) (emphasis added). The factual inquiry on the question of pretext is substantially more specific than for the prima facie case. *See St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 516, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993). However, "a plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated." *Reeves,* 530 U.S. at 147.

"The factfinder's disbelief of the reasons put forward by the defendant (particularly if disbelief is accompanied by a suspicion of mendacity) may, together with the elements of the prima facie case, suffice to show intentional discrimination. Thus, rejection of the defendant's proffered reasons will *permit* the trier of fact to infer the ultimate fact of intentional discrimination." *Id.* at 146–47 (2000) (*St. Mary's Honor Ctr. v. Hicks*, 509 U.S. at 511).

A plaintiff's evidence at the third step of the *McDonnell Douglas* analysis must be viewed as a whole, rather than in a piecemeal fashion. *Byrnie v. Town of Cromwell, Bd. of Educ.*, 243 F.3d 93, 102 (2d Cir. 2001), ("At summary judgment in an employment discrimination case, a court should examine the record as a whole, just as a jury would, to determine whether a jury could reasonably find an invidious discriminatory purpose on the part of an employer. A court is to examine the entire record to determine whether the plaintiff could satisfy his ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff. A motion for summary judgment may be defeated where a plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated." (internal citations and quotation marks omitted)). No singular piece of evidence standing alone need be sufficient "to permit a rational finder of fact to infer that defendant's employment decision was more likely than not motivated in part by discrimination. … [A] plaintiff may satisfy her burden by building a wall out of individual evidentiary bricks." *Walsh v. New York City Hous. Auth.*, 828 F.3d 70, 76 (2d Cir. 2016).

Defendants claim they terminated Ms. Vaughn for a policy violation that was so serious that it was a terminable offense. Yet, they produced no evidence of anyone else having been terminated for anything comparable. In support of their dubious claim that an internal investigation should insulate an employer from discrimination charges, defendants cite *Blaise v. Verizon N.Y. Inc.,* 804 Fed. Appx. 68 (2d Cir. 2020), a non-precedential summary order. *Blaise* is readily distinguishable in that Verizon proffered *substantial* comparator evidence showing that Blaise was not subject to disparate treatment: nine non-minority managers were terminated for the same offense, improperly altering time sheets; Blaise produced no evidence of pretext.

*Blaise*, 804 F. App'x at 72. Similarly, the *Parsons v. JPMorgan Chase Bank, N.A.,* 2018 WL 4861379 (E.D.N.Y. Sept. 30, 2018), court dismissed based on the lack of pretext evidence where the African-American bank manager was replaced by another African-American manager, and there was no evidence of a cover-up, unlike in the instant case. *Hamilton v. DeGennaro,* 2019 WL 6307200, at *13 (S.D.N.Y. Nov. 25, 2019), is factually inapposite as it involved serious corporal punishment allegations against a teacher, who threatened witnesses.

Both training buddies, Ms. Krajna and Ms. Monroy, facilitated the transaction to open a promotional money market account for the customers, Ms. Varjan and her husband, funding it with new funds and money from their existing account, although they claim otherwise in their declarations prepared after the close of fact discovery. Ex. A (Vaughn Tr. 80:12-24, 93:12-25). Ms. Olivia Antonio, the M&T Bank teller, stated in her declaration, submitted to the EEOC, that: "Ms. Monroy responded it was 'kind of like the customer was cheating,' but that it was fine. Ms. Monroy then directed and watched me as I entered the transaction into M&T Bank's teller application." Ex. G (P-9). The Buddy Statement authored by Ms. Monroy and Ms. Krajna omitted the fact that Ms. Krajna assisted Ms. Vaughn with the WIP ticket closing out the customer's account and transferring their funds to the money market account. Ex. G (P-1-12, 162-163, 189). Defendants allege that Ms. Vaughn handled the transaction entirely herself. The credibility determination should be left to the jury.

Here, Ms. Krajna and Ms. Monroy both testified that they did not have the "supervisory authority" to instruct Ms. Vaughn not to do the customers' requested money market transfer. Ex C (Krajna Tr. 18:3-5, 36:2-12, 43:5-14); Ex D (Monroy Tr. 29:20-22). The Summary Termination and their declarations submitted after close of discovery say the opposite – that the M&T Bank buddies "instructed" Ms. Vaughn not to process the transaction, that they were in a

supervisory position to direct Ms. Vaughn not to process the transaction, and that Ms. Vaughn was insubordinate. Ex H (M&T 72-73); *Hayes v. New York City Dep't of Corr.,* 84 F.3d 614, 619 (2d Cir. 1996) ("a party may not create an issue of fact by submitting an affidavit in opposition to a summary judgment motion that, by omission or addition, contradicts the affiant's previous deposition testimony."). It is not credible that the decisionmakers, Mr. Murphy and Mr. Carroll, believed that training buddies had supervisory authority over a branch manager, and terminated Ms. Vaughn for insubordination.

Ms. Krajna claims in her declaration that Ms. Vaughn admitted that she made a mistake and said, "make way for the cheater." Ms. Krajna and Ms. Monroy make no mention of this conversation in their Buddy Statement, dated February 26, 2016. Ex. G (P-189). Ms. Vaughn, in her deposition, denied that these conversations ever occurred. Ex. A (Vaughn Tr. 102:16-22). Ms. Vaughn did not learn that this transaction violated bank policy until she met with Mr. Murphy and Ms. Picone on February 26, 2016, four days later. Ex. A (Vaughn Tr. 105:16-24).

To support Ms. Vaughn's termination, Mr. Bailey reached back nearly 30 years and accused Ms. Vaughn of engaging in "check kiting." Ex. H (M&T-41, 389). Check kiting is an intentional act of fraud, involving transferring monies from one bank account to another bank account to make it appear that there are sufficient funds. There is absolutely no evidence that Ms. Vaughn ever engaged in "check kiting." As a young teller, some 30 years ago, Ms. Vaughn inadvertently bounced several checks. Ex. H (M&T-58). Mr. Bailey's baseless attribution of criminal intent demonstrates implicit racial bias against Ms. Vaughn, an African American. He falsely advised Ms. Monroy and Ms. Krajna that Ms. Vaughn claimed that the branch buddies opened the customers' account alone and that Ms. Vaughn was an "innocent bystander." Ex. H (M&T-218). There is no evidence that Ms. Vaughn ever asserted that the buddies opened the

account. Rather she consistently alleged that the buddies assisted her in opening the account. Ex. A (Vaughn Tr. 80:12-84:24, 93:2-25). Her testimony is buttressed by the customer, Ms. Varjan's affidavit to the same effect. Ex G (P-12). Mr. Bailey, an experienced Human Resources professional, asserted these reckless accusations without any evidence in support. He cited as another supposed policy violation an unsuccessful attempted break-in at the White Plains branch while Ms. Vaughn was on vacation. The alarm company put the alarm system in test, essentially turning it off. Ex. H (M&T-189). Mr. Murphy demoted Ms. Vaughn despite knowing she was on vacation. Ex. H (M&T-186).

Disregarding instructions from Ms. Vaughn's attorney by letter, dated March 26, 2016, M&T Bank failed to preserve the video which would have shown Ms. Krajna returning to assist Ms. Vaughn with combining the accounts into the money market account. Ex. G (P-657); (*Residential Funding Corp. v. DeGeorge Fin. Corp.,* 306 F.3d 99, 113 (2d Cir. 2002) ("[D]iscovery sanctions, including an adverse inference instruction, may be imposed upon a party that has breached a discovery obligation not only through bad faith or gross negligence, but also through ordinary negligence."). A jury may infer that Ms. Krajna returned to assist Ms. Vaughn close out the existing account and transfer the monies to the money market account.

In accordance with *Reeves*, a jury could infer that Ms. Vaughn suffered a racially hostile environment under Mr. Murphy and M&T Bank's falsehoods were in service of terminating Ms. Vaughn based on race to make room for Mr. Abate, a M&T Bank Caucasian branch manager. M&T Bank attempted to cover up its discriminatory termination by submitting to the EEOC a false document that Ms. Vaughn's replacement, Carl Abate, was "two or more races, not hispanic." Ex. K (M&T- 5136). Mr. Abate is Caucasian. Ex. B (Murphy Tr. 99:24-100:3); Ex. G (P-363).

A jury could infer that Ms. Krajna and Ms. Monroy never advised Ms. Vaughn that transferring the elderly customers' funds to the money market was against M&T Bank policy. Ms. Antonio stated that Ms. Monroy advised that the buddies were sent to the Mamaroneck branch to "watch over" Ms. Vaughn. Ex. G (P-8-10). The reasons stated in the Termination Summary were false, that the buddies had the "supervisory authority" to "instruct" Ms. Vaughn not to process the customers' request to transfer funds to the money market account.  Ex G (P-162-163, 186); Ex C (Krajna Tr. 18:3-5, 36:2-12, 43:5-14); Ex D (Monroy Tr. 29:20-22). Both Ms. Krajna and Ms. Monroy testified that they did not have the "supervisory authority" to "instruct" Ms. Vaughn not to process the customers' requested transaction. Ex. C (Krajna Tr. 18:3-5, 36:7-12, 43:5-14); Ex. D (Monroy Tr. 29:20-22).  Ms. Vaughn was given no warning, despite M&T Bank's personnel policy, and Mr. Carroll and Mr. Murphy refused to accept Ms. Vaughn's written statement. M&T Bank summarily terminated Ms. Vaughn for pretextual reasons to make room for Mr. Abate.

### III.    Defendants' Cover-up and their Racially Coded Comments Reveal They Were Motivated At Least In Part By Unlawful Race Discrimination

"To avoid summary judgment ..., 'the plaintiff is not required to show that the employer's proffered reasons were false or played no role in the employment decision, but only that they were not the only reasons and that the prohibited factor was at least one of the "motivating" factors.' " *Holcomb.,* 521 F.3d at 138 (2d Cir. 2008) (quoting *Cronin v. Aetna Life Ins. Co.,* 46 F.3d 196, 203 (2d Cir. 1995)). Although "[d]irect evidence of discrimination, 'a smoking gun,' is typically unavailable, ... [i]t is well settled ... that ... plaintiffs are entitled to rely on circumstantial evidence." Id. at 141 (internal citation omitted). *Gordon v. City of New York,* 2018 WL 4681615, at *7 (S.D.N.Y. Sept. 28, 2018).

Defendants make much of Ms. Vaughn's innocent error in misjudging Mr. Abate's age but are resoundingly silent as to Mr. Abate's race. They also fail to address defendants' blatant misrepresentation to the EEOC investigator where they falsely claimed he was biracial. "Once there is some evidence that at least one of the reasons proffered by defendant is false, misleading, or incomplete, a host of determinations properly made only by a jury come into play, such as whether a false explanation constitutes evidence of consciousness of guilt, an attempt to cover up the alleged discriminatory conduct, or an improper discriminatory motive coexisting with other legitimate reasons." *Bennett v Health Mgt. Sys., Inc.,* 92 AD3d 29, 43 (1st Dept 2011) (confirming that a jury is entitled to infer from evidence of falsity that the cover-up was a cover-up of discrimination). Given defendants' knowingly false claim to the EEOC investigator that Mr. Abate was biracial, and their later admission that Mr. Abate is white, the issue of whether defendants' termination of Ms. Vaughn was pretextual, and whether they attempted to cover up their racially discriminatory motives is properly one for the jury to determine.

Courts in this circuit have denied summary judgment in similar circumstances, finding sufficient evidence of pretext where plaintiff provided evidence of a cover up. See, e.g., *Kirkland v. Cablevision Sys.,* 760 F.3d 223, 225 (2d Cir. 2014) (evidence included plaintiff's testimony that the human resources manager falsified and back-dated documents to support poor performance reviews); see also *Quartey v. Schiavone Const. Co. LLC*, 2014 WL 1276476, at *6 (E.D.N.Y. Mar. 27, 2014) (finding issues of fact concerning "implausibilities, inconsistencies, or contradictions" supported an inference that Defendants "did not act for the asserted non-discriminatory reason"), *Henry v. Wyeth Pharm., Inc.,* 2007 WL 2230096, at *30 (S.D.N.Y. July 30, 2007) (denying summary judgment on Title VII race discrimination claims where there were

issues of fact concerning the truthfulness of defendants' representations concerning plaintiff's job performance as well as the affidavits filed in support of the defendants' motion).

The use of racially charged code words, together with the flimsiness of the termination excuse and replacement by a Caucasian employee raise sufficient material disputes of fact to defeat summary judgment. In *Humphries*, Plaintiff asserted her supervisors used code words that invoked the stereotype of the "angry black woman," including "aggressive, agitated, angry, belligerent, disruptive, hands on hip, hostile, threatening." *Humphries v. City Univ. of N.Y.,* 2013 WL 6196561, at *9 (S.D.N.Y. November 26, 2013). The court found that use of stereotyping "adjectives to describe an employee could, in combination with other concrete factual allegations, support a claim of racial and/or gender discrimination." *Id.* In *Colbert v. FSA Store, Inc.,* the court sustained race discrimination claims where plaintiff's manager instructed him to be "less intimidating" to other employees "without identifying any intimidating conduct but emphasizing Colbert's 'cultural distinctiveness.'" *Colbert v. FSA Store, Inc.,* 2020 WL 1989404, at *1 (S.D.N.Y. Apr. 27, 2020). Race discrimination is often subtle, veiled in stereotypical comments and dismissive treatment. Here, in addition to bullying, dismissing Ms. Vaughn in racially coded terms as "boisterous" and "not putting forth a professional image at meetings," and stating she was "overpaid," Mr. Murphy approved her termination for an exceedingly minor alleged offense and defendants promptly replaced her with a white manager.

The only other African American branch manager, Susan Gordon, brought an internal discrimination complaint against Mr. Murphy. Ex. K (M&T-4928-4929). M&T Bank failed to investigate the discrimination complaint, but Mr. Murphy was ultimately forced to resign for being a "bully" and treating the branch managers "harshly." Being a bully to all the branch managers certainly is not inconsistent with singling out those most vulnerable.

17

Defendants' falsely contend that plaintiff has not proffered evidence of pretext, however, as more fully discussed above, plaintiff has pointed to extensive record evidence of pretext, including her replacement with a white manager, M&T Bank's cover up of the Mr. Abate's race, the flimsiness of the reason for her termination, the fact that the training buddies were not disciplined for their role in assisting her to complete the transaction, and the racially coded words Mr. Murphy used to dismiss and intimidate her. The cases they cite in support are unavailing. Specifically, *Tubo v. Orange Reg'l Med. Ctr.,* 690 Fed. App'x. 736 (2d Cir. 2017) is a non-precedential case and is distinguishable in any event because the court held that plaintiff hadn't even established a prima facie case. The plaintiff's only evidence of pretext in *Murphy v. City of Newburgh*, 2018 WL 4625806 (S.D.NY. Sept. 26, 2018) was her own testimony. In contrast, here Ms. Vaughn has multiple sources of evidence of pretext, including (1) defendant Mr. Murphy's admission in his deposition that he dismissed her in meetings and made the racially coded comments Ms. Vaughn testified to (Ex B (Murphy Tr. 65:12-67:24)); (2) defendants' replacement of Ms. Vaughn with a white manager and submission of false documents to the EEOC concerning Mr. Abate's race (Ex. K (M&T-5136), Ex B (Murphy Tr. 99:24-100:3); and (3) affidavits by Ms. Varjan, the customer, and Ms. Antonio, a former teller employee, conflicted significantly with the Termination Summary and Buddy Statement prepared by current employees, undermining the purported justification for termination. Ex G (P-12). Ex. G (P-25-27); (4) defendants' deviation from their progressive discipline personnel policy to summarily dismiss her (Ex. K (M&T-P005111-113)); and (5) failure to discipline the non-black training buddies for their roles in assisting her. Numerous issues of material fact require denial of summary judgement on pretext.

**IV.     M&T Bank Departed from the Personnel Policy**

M&T Bank's personnel policy provides that warnings remain in effect for one year. Ex. K (M&T-P005111-113). Ms. Vaughn's last disciplinary action dated to 2013, three years prior, for the unsuccessful break-in while she was on vacation and the assistant branch manager was covering, a completely unrelated event. Yet for the minor alleged violation of allowing a customer to combine a new check and funds from another account, M&T Bank departed from its own corrective action policy and failed to apply a warning or other corrective action short of termination to an employee with a 32 year employment history. Ex. K (M&T-P005111-5124).

"[A] departure from established procedures may provide support for an inference of discrimination in some contexts." *Tucker v. New York City,* No. 05 Civ. 2804, 2008 WL 4450271, at *5 (S.D.N.Y. Sept. 30, 2008) (citation omitted); see also *Nurse v. Lutheran Med. Ctr.*, 854 F.Supp.2d 300, 317 (E.D.N.Y.2012) ("It is well settled that 'departures from procedural regularity can create an inference of discriminatory intent, sufficient to establish a prima facie case' of employment discrimination.") (citation and alterations omitted*); Armstrong v. Metro. Transp. Auth.,* 2014 WL 4276336, at *14 (S.D.N.Y. Aug. 28, 2014). A jury may infer discrimination from M&T Bank's departure from its personnel policy.

Ms. Vaughn performed well in her job for over 30 years. Defendants attempt to paint Ms. Vaughn as an untrustworthy, underperforming employee when in fact she was a diligent manager who provided excellent customer service which contributed to her branch's consistently high revenue performance. CODF ¶ 125. In 2013, Ms. Vaughn was demoted for a burglary incident while she was on vacation and had arranged for coverage by her assistant manager. The assistant manager allowed personnel into the Bank without first inspecting and securing the scene. Ex. H (M&T 189); Ex G (P-429-430). That year, Ms. Vaughn's performance evaluation ratings were

positive in every category except one, due to the assistant manager's mismanagement of the break-in. Her overall performance was rated favorably the year she received feedback concerning a disgruntled employee's complaint, and she was commended for her response to the discussion. The notes in her file from 2007 and 2006, ten years prior to her termination, similarly did not result in a negative performance rating for the year. She accepted the feedback, and corrected errors by her staff. The few extant memoranda and discussion records in her personnel file demonstrate that M&T's predecessors implemented the progressive discipline policy, while M&T flouted it to discriminatorily and summarily terminate a Black bank manager in order to retain a white branch manager.

M&T Bank has a one-sentence written equal opportunity policy. M&T Bank applies the "policy" inconsistently. For example, when Ms. Gordon complained about discrimination by Arthur Murphy, the Human Resource manager admitted he did not investigate the discrimination complaint. Ex. K (M&T-4928-4929); Ex E (Bailey Tr. 40:11-15). Neither Ms. Gordon nor Ms. Vaughn were promoted to Assistant Vice President, despite decades of exemplary performance, although white branch managers were promoted during the same time period. Ex. H, I, J and K (M&T-283, 3278-3640). M&T Bank has neither cited nor produced evidence of an "affirmative action program."

## V. Defendants Subjected Ms. Vaughn to Harsher Standards Than Non-Black Employees

When Ms. Vaughn attempted to provide a written statement about the money market incident to Mr. Carroll days later, he refused to accept the statement, instead terminating her on the spot. Mr. Murphy was aware, based on prior performance reviews, that Ms. Vaughn needed "ample time" to prepare a written statement. Ex. G (P-245); Ex B (Murphy Tr. 78:22-80:12). In similar circumstances, courts have found that "a plausible inference of discrimination arises"

where a black employee "was subject to employment requirements and burdens to which other persons who were not African-American were not subject, such as being singled out among his colleagues to provide written justification for his annual bonus. *Colbert,* 2020 WL 1989404, at *4 (S.D.N.Y. Apr. 27, 2020) See, e.g., *Belabbas v. Inova Software, Inc.,* 2017 WL 3669512, at *1-2 (S.D.N.Y. Aug. 24, 2017) (sustaining a claim under Section 1981 where a female plaintiff alleged she was given different assignments from her male colleagues and was subject to "misogynistic and discriminatory comments" in the office).

Ms. Krajna and Ms. Monroy assisted Ms. Vaughn with processing the transaction at issue, yet neither was disciplined. Ms. Krajna testified that it is possible that Ms. Vaughn was told that it was okay to process the transaction. Ex C (Krajna Tr. 36:2-6).  The customer, Theresa Varjan's affidavit similarly contradicts the Buddy Statement, stating, "The [training employee] told Lynn how to enter information into the computer to process our request." Ex. G (P-12). As current employees, Ms. Krajna and Ms. Monroy are beholden to their employer. However, the customer, Ms. Varjan, has no conflict of interest, and no discernible motive to lie. Despite assisting with an allegedly impermissible policy violation, both buddies got off scot-free without even a discussion record, whereas Ms. Vaughn was terminated with blatantly false statements in her Termination Summary.  Ex. G (P-162-163).

## VI.     Ms. Vaughn was Subject to a Hostile Work Environment

Ms. Vaughn's allegations of hostile treatment in her EEOC charge defeat defendants' claim that she failed to exhaust her administrative remedies. A hostile work environment is not a separate EEOC charge. (P-1).  However, she specifically alleged hostile treatment by Mr. Murphy and Ms. Picone in her EEOC charge:

> Arthur Murphy, Jr., and M&T's Regional Manager, Shellie Picone, both
> of whom are white, literally cornered Ms. Vaughn in the kitchen area of

the bank branch, loudly berated her over the transactions so that her
subordinates could hear, and demanded she handwrite a statement
immediately.

Ex. G (P-1-12 at Par. 12).

She alleged the same hostile treatment in her federal complaint at paragraph 61. Courts

routinely find that administrative exhaustion was met if the underlying conduct alleged in both

complaints is similar, even where plaintiffs didn't specifically mention hostile work environment

in the administrative charge. See, e.g., *Wood v. Sophie Davis Sch.,* 2003 WL 21507579, at *3

(S.D.N.Y. June 30, 2003) ("In view of the similarity of the underlying conduct alleged in the two

complaints, I am satisfied that an investigation into the hostile work environment could

reasonably be expected to grow of out of the NYSDHR discrimination charge"); see also *Khater*

*v. API Indus., Inc.,* 2017 WL 6515531, at *3 (S.D.N.Y. Dec. 19, 2017) citing *Williams v. N.Y.C.*

*Hous. Auth.,* 458 F.3d 67, 70 (2d Cir. 2006) ("A claim is considered reasonably related if the

conduct complained of would fall within the scope of the EEOC investigation which can

reasonably be expected to grow out of the charge that was made. In this inquiry, the focus should

be on the factual allegations made in the EEOC charge itself, describing the discriminatory

conduct about which a plaintiff is grieving.")

**VII.    Summary Judgement Should be Denied on Plaintiff's Supplemental
State Law Claims**

Plaintiff's NYSHRL law race and age claims are evaluated according to the same burden

shifting framework as her federal claims. *See Tolbert,* 790 F.3d at 434 (2d Cir. 2015). For the

reasons more fully discussed above, plaintiff's pendant state claims should be heard by the jury,

as there are numerous material issues of disputed fact.

**VIII.  Each of the Named Defendants Participated in the Discrimination and Is Individually Liable under Section 1981 and the Executive Law**

All of the named defendants actively participated in the discriminatory acts. It is well settled that individuals may be held liable under § 1981 and the Executive Law for discriminatory acts, including those giving rise to a hostile work environment. See, e.g., *Patterson v. Cty. of Oneida,* N.Y., 375 F.3d 206, 226 (2d Cir. 2004). The discrimination included the pretextual termination by Mr. Carroll, approved by Mr. Murphy; the hostile treatment by Ms. Picone, Mr. Murphy, and Mr. Carroll in cornering Ms. Vaughn to demand she immediately write a statement, yelling at her in earshot of subordinates and the refusal to accept the statement; and the bullying, dismissiveness, and racially coded terms Mr. Murphy used about Ms. Vaughn. Mr. Murphy was personally involved in multiple discriminatory acts. He admitted that he approved Ms. Vaughn's termination.  He also bullied her, dismissed her in racially coded terms as "boisterous" and "not putting forth a professional image at meetings," and admitted that he was dismissive of her at meetings and that he told her she was "overpaid." Ex A (Vaughn Tr. 132:24-133:15); Ex B (Murphy Tr. 65:12-67:24, 73:23-74:2, 29:7-23). Similarly, there is abundant record evidence that Mr. Carroll refused to accept Ms. Vaughn's written statement and terminated her employment. Ex B (Murphy Tr. 83:13-22; Ex A (Vaughn Tr. 116:17-25, 124:21-25). Mr. Bailey sought and secured Mr. Murphy's approval of Mr. Carroll's decision to terminate Ms. Vaughn's employment. Ex B (Murphy Tr. 109:22-110:10).

Ms. Monroy and Ms. Krajna authored the Buddy Statement, falsely claiming they did not assist Ms. Vaughn with the transaction, which contributed to her termination. Ex G (P-189); Ex A (Vaughn Tr. 80:12-24, 93:12-25). Both the teller, Ms. Antonio, and the customer, Ms. Varjan, attested that Ms. Krajna assisted Ms. Vaughn with withdrawing the funds from the savings account and depositing them into the money market together with a new check for $33,132.51

that the customer brought in.  Ex G (P-8-12, 25-29); Ex C (Krajna Tr. 25-26). The customer, Theresa Varjan's affidavit similarly contradicts the Buddy Statement, stating, "The [training employee] told Lynn how to enter information into the computer to process our request." Ex G (P-12). Both Ms. Monroy and Ms. Krajna also falsely claimed they instructed her not to process the transaction. Ex. C (Krajna Tr. 18:3-5, 36:7-12, 43:5-14).  The other buddy assisting the teller, Ms. Monroy, contradicted herself in her deposition, first admitting that she told Ms. Vaughn it was "kind of like the customer was cheating, but that was fine," then later claiming she advised Ms. Vaughn not to process the transaction. Ex D (Monroy Tr. 54:2-24, 55:17-25). Because all of the named defendants were personally involved in the discriminatory acts, they are personally liable under Section 1981 and the Executive Law.

### Conclusion

For the reasons set forth above, in Plaintiff's Counterstatement of Disputed Material Facts, and in the supporting evidence, this Court should deny Defendants' motion for summary judgement in its entirety.

Dated:  New York, New York
October 19, 2020

By:    _____/s/_____
Bradford D. Conover, Esq.
Molly Smithsimon, Esq.
Conover Law Offices
Attorney for Plaintiff
345 Seventh Avenue, 21st Floor
New York, New York 10001
(212) 588-9080
brad@conoverlaw.com
molly@conoverlaw.com